Good morning, honors. May it please the court, Conrad Rasmussen for Officer Jeremy Hellawell, the appellant and defendant. I apologize, I was a little slow in getting to the podium this morning. I would like to reserve a couple of minutes for rebuttal, if I could. The court has asked us to address the jurisdictional issue and referenced the parties to several cases. In reviewing those cases, I've come to the determination that it looks like there's a split among the circuits and it appears that the Ninth Circuit has not squarely addressed the issue of whether this court has jurisdiction on a denial of qualified immunity to the officer to address the admissibility of evidence. And I submit that you do, because Rule 56E mandates that the district court only consider admissible evidence when ruling on a summary judgment motion. And if the district court makes an error in considering inadmissible evidence, and as a result of considering inadmissible evidence, denies the officer qualified immunity, that strips the officer of the protection of qualified immunity. And all of the cases tell us that the issue of qualified immunity should be decided up front as soon as possible at the summary judgment stage, if possible. And it is an immunity that protects the government official from not just liability, but from going to trial. And if this court does not undertake an analysis, as was done in the Mersh opinion in the Fifth Circuit, the Makuba opinion in the Eleventh Circuit, and the Jones opinion in the Eighth Circuit, to look at whether the evidence that was considered by the district court was admissible, then there's a potential, as for what happened in this case, for there to be inadmissible evidence to be considered. That evidence then serves as a basis to deny qualified immunity, and the government official is then compelled to go to trial when they shouldn't have to. And the public policy behind qualified immunity, I can't stress that enough. This court is well aware of all of the effort that parties go to, and all of the expense that parties go to, to bring summary judgment motions, to conduct discovery. It's a lot of work, and the parties, particularly the officer, relies upon the district court to only consider admissible evidence in ruling on such a motion. And if the district court erroneously relies on inadmissible evidence to deny the officer qualified immunity, and wrongfully compel that officer to attend a trial, then the purpose of qualified immunity is simply eviscerated. So this court does have jurisdiction to address whether the evidence was erroneously considered, and it should. A comment on the Johnson v. Jones United States Supreme Court case that is discussed in some of the circuit opinions. Johnson v. Jones did not involve... Can I follow up on your argument regarding having jurisdiction to decide evidentiary issues? In your view, what's the process then for this particular case if we say, well, we'll go ahead and take a look at the objections on the admissibility of evidence, and once we rule on that, though, do we then engage in the process of looking at the remaining factual disputes? That's done at the trial court usually. We're not equipped to assess the evidence to say, well, I think there's sufficient factual disputes here such that the court was still right to deny qualified immunity. With regard to the shooting, there were various people who were in a position to see what happened, and their declarations and testimony conflicted. I think that you have the capacity to perform that analysis because, for instance, in the Jones case, the Eighth Circuit case, in looking at the due process analysis, the circuit court there looked at whether, after discussing Johnson v. Jones, looked at whether the evidence that served as the basis for the denial of qualified immunity, they looked at that evidence, determined that it was inadmissible, and then looked at the remaining evidence and decided that there was no due process claim that could be made out, and therefore the official could be afforded qualified immunity. This panel and this court can undertake that analysis, and it may very well be that after you determine what evidence is admissible and what evidence is not admissible, that you may determine that there are nonetheless enough evidence to create a tribal issue on the facts that would give rise to qualified immunity. You can make that decision. Well, let's assume you were correct for the moment, and that we could examine and go through each piece of evidence and make whatever judgment we want to make. What would you do in this case? You would exclude the expert's testimony or affidavit? Well, there is an expert report by Mr. Streed. You can answer the question. Is that what you're talking about, that we should hold that report inadmissible? Not only the Streed report, but the declarations from the witnesses that were provided by the plaintiffs upon which the court relied in assessing whether Hallowell should be afforded qualified immunity with regard to the shooting. Obviously, in this case, the shooting is the crux of the issue. Okay. So with all of the affidavits, you would exclude? On what basis? On the basis that, and we've parsed this out not only in the motion but in our briefs, on the basis that, for instance, with respect to Mr. Flores, on the basis that there is not an adequate showing that he has the requisite personal knowledge of what happened. One of the key aspects in evaluating an affidavit is whether the witness has personal knowledge of what he is attesting to. And in this case, they have presented an affidavit from, I'll start with Flores. Flores is driving, and he is driving behind Officer Hallowell and Mr. Foster, and he purports to say that when he saw Mr. Foster behind, running toward the corner of the auto zone, that he didn't have a gun in his hand. But the key reason to exclude and not consider his declaration is the fact that he does not say in his declaration that he saw the events that immediately preceded the shooting, and that is key. Because there are any number of witnesses who may have been in the area who can say, I didn't see a gun in Mr. Foster's hand, or I didn't see him turn, but unless you establish that that witness is talking about the same events and the same points in time that led Officer Hallowell to decide to shoot this man, Mr. Foster, unless you have those predicate facts established to show that that affidavit is admissible because the witness was there and actually saw what happened. Mr. Rasmussen, the main problem I have with your argument is that it seems to me that in, what's the name of this case, George v. Morris, we rejected that very reasoning, right? We said that Scott v. Hendrick, you know, doesn't impinge upon our line of cases and says what? The inquiry under Scott concerns genuineness mainly, question of whether there is enough evidence in the record for a jury to conclude that the facts, such facts are true, right? We may not decide at this interlocutory stage if the district court properly performs it. That's what you're asking to do, right? To decide at this stage whether the district court properly performed the function, namely, of, you know, addressing your objections. George says we can't do it and follows Scott. We're bound by it, aren't we? Or tell me why we're not bound by it. No, because the difference is if you're looking at the proper foundation under Rule 56, it's not simply is there one witness that saw the same thing that the officer saw and the officer says one thing and the witness says another, I understand that. If you have the proper foundation for the admissibility of the affidavit of the witness and it's simply a he said, she said, and the affidavit is competent and admissible, then I understand you don't reevaluate that in reviewing a denial of qualified immunity. But I think in order to do justice to the officer and decide whether qualified immunity is applied, if there is a genuine issue about whether that affidavit should have been considered in the first place to create a material fact, then that's proper for you to review because that's a legal error regarding a piece of evidence that's key to the denial of qualified immunity. But it says in George that the whole point of this is in leaving questions of fact to the district court. It says that this would spare us from poring over affidavits, depositions, and other discovery materials. If we could exercise the same plenary review as the district judge below or if we were jurors, etc. But the scrutiny of the records cannot be squared with the Johnson paradigm. The whole point was if there are nice simple questions of law, that's appropriate for qualified immunity. But if we're to become district judges, or they said we shouldn't become district judges and have to look at the affidavits, decide about them, it also includes whether they're admissible, that we're not supposed to have to get into the questions of what the affidavits, depositions, and other materials really mean, whether they're right or wrong or good or bad. We take all those things from the non-movement party standpoint. I understand that. The point is if the evidence is admissible. It doesn't say anything about that, if it's admissible. In George v. Morris, it doesn't say anything about that unless it's admissible. It could easily have said that. I understand, but I think it presupposes that the evidence is admissible, and you have to start with the trial court. Where does it presuppose it? What makes you think it presupposes it? There's nothing in the opinion that suggests it presupposing admissibility. Well, I think that that's assumed, Your Honor. If you have a dispute over two items of admissible evidence that create a triable issue of fact, then we don't ask you to re-review that because the trial court has already done that, and we just have to go to trial. No, I understand. That would be a perfectly respectable position. Right. But it's not the position that we took. Originally, if you go back a step or two, the idea was if it's a legal issue, we can review it. If it's a factual issue, we can't. That's the basis from which we start. I understand. But then what we seem to say about it is that we don't want to go into the business of reviewing affidavits, reviewing depositions, examining them, whether they're right or wrong or good. We leave that to the district court. And there's no exclusion in George v. Morris, at least. There's no exclusion for when these documents or testimony or whatever, whether they're admissible or not. We could have said that, and we didn't. I understand that, but I still think it's appropriate from a public policy standpoint to go ahead and perform that analysis for the reasons that underline qualified immunity. And I understand that there is a tension between the public policy supporting qualified immunity and this court's role vis-a-vis the district court's role. But if the officer is compelled to go to trial when he should be afforded qualified immunity and the matter is tried and those same errors are made at the trial level that result in an adverse judgment to the officer or a declination of qualified immunity, then there will be an appeal from the judgment, and the panel will have to go back and parse through all those evidentiary decisions anyway. To my mind, it just makes sense to take jurisdiction and do it at this point. I see my time is up. Thank you. Thank you. Thank you. Very good morning to you all, and may it please the Court. My name is Justin Palmer. I'm joined at co-counsel table with Peter Caron and Sean Neal. We represent the plaintiffs in the appellees in this case. The plaintiffs are requesting that the Court affirm the district court's denial of the motion for summary judgment to deny this interlocutory appeal and to also remand this case back to the trial court for a jury trial. The reasons for that request, Your Honors, are really twofold. One concerns the jurisdictional issues that Mr. Rasmussen just discussed, but also they concern some substantive issues. I'll group my comments today in those two groups. In terms of the procedure, it's important to note where we are. We're on an interlocutory appeal, which is a snapshot judgment based on what the evidence is. So we're only looking at the court's review of the motion for summary judgment and that evidence that was put forth in that case. If we're looking at the evidence that was put forth on summary judgment, why shouldn't we be able to look at the evidentiary rulings that the district judge made with respect to what evidence is admissible and not admissible in support of either side and, you know, make those rulings? Because as Mr. Rasmussen says, the issue is going to ultimately have to be decided anyway. Your Honor, there are a few reasons to answer your question. Number one, Johnson v. Jones, the Supreme Court's case in 95, tells us that qualified immunity appeals on an interlocutory basis are reserved for issues of law. And when you apply that rule within the context of an interlocutory appeal, the questions regarding the evidence go to the sufficiency of the evidence and whether or not the parties can put forth that information in a manner that's admissible at trial. But that's not judging the conclusions based on that evidence. We're making factual determinations. It's not a question of law. Secondly, the court's, the McKean v. DuPlein's Sixth Circuit, excuse me, the Seventh Circuit analysis is really persuasive in it and it illustrates why this court should not review those cases or review those evidentiary challenges at this particular stage. Number one, on an interlocutory appeal, the court lacks the full benefit of the full record as a district court might. And so when it concerns a certain piece of evidence, the district court will be in a position to understand what that piece of evidence is in a position that might differ from this panel. But also, that district court is more readily familiar with the ways in which a party, either introducing or opposing a motion for, opposing or requesting a motion for summary judgment, would be able to put forth that evidence. And in fact, if you look at page 691 of that opinion, the court says, quote, an interlocutory appeal based on the insufficiency of evidence makes an unwise use of an appellate court's time by making a decision on a limited record. I heard Mr. Rasmussen a few seconds ago speak to the justice concerns and the policy concerns about the officer with those same policy issues and justice concerns cut towards a plaintiff in an interlocutory appeal. This shooting occurred in 2018. The court issued its order denying a motion for summary judgment exactly one year ago. If this court were to allow these types of appeals that concern factual disputes, because again, Johnson v. Jones tells us that when an order denying a motion centers on factual issues, a court of appeal cannot touch those issues. And the only question on an interlocutory appeal, there are only two questions to be decided. Number one, was there a violation of the plaintiff's right in that case? And then secondly, number two, was that right clearly established? Issues of inadmissibility go to the sufficiency of the evidence that the plaintiff, in this case, used to properly oppose that motion. And circling back to the qualified immunity discussion, Your Honor, I'd also like to invite the court's attention to a recently published Ninth Circuit Court of Appeal in Bonneverk v. City of Clarkston. That case was decided two weeks ago, and it illuminated the qualified immunity standard. Did you send in a letter about that case? I did not, Your Honor. But if I may have 24 hours, I would be happy to submit a letter brief on that particular issue. Oh, no, no, not a brief. I just mean the citation. All right, would you give the clerk the citation to the case? Do you have the citation? I'm not sure if it made it to the reports just yet, but I know it was published on the court's website two weeks ago. So what's the name of the case? Sure, it's Bonneverk, B-O-N-I-V-E-R-T, v. City of Clarkston. And Judge Hawkins authored the opinion. Okay, you have a case number for that case? Your Honor, as I mentioned before, I don't. I looked at the case directly from the court's website. Okay, you have a date? Date it was decided? I don't. I know it's two weeks ago, but I don't have a specific date. Two weeks ago, okay. All right, thank you. So in applying that principle to this case, Your Honors, again, the question becomes whether or not, number one, Mr. Foster's rights were violated, and number two, whether those rights were clearly established. When you review the district court's order denying the motion for summary judgment, it's important to note that the court did not deny qualified immunity outright. The court only denied qualified immunity based on a vigorous factual dispute, and the three challenged constitutional acts in this case are, number one, the investigatory stop, number two, the force that was used during that stop, and also number three, the shooting. The court, in coming to its order, concluded on page eight, number one, that there was a factual dispute concerning the force used by Mr. Hallowell on Mr. Foster, for the force used on the investigatory stop. And in terms of the shooting, the court concluded that it could not even reach the question of qualified immunity based on that bona fide, vigorous, factual dispute. So for purposes, again, of this interlocutory appeal, we don't even touch the force used on the investigatory stop, and we don't touch the shooting. If there is a pure question of law presented in this particular case, that question only is whether or not Mr. Hallowell had reasonable suspicion to approach Mr. Foster on July 4, 2013. And the answer, respectfully, to that question, Your Honor, is no, he did not. Again, when we review the record in this particular case, Mr. Hallowell responded to the NDO shopping plaza based purely on a bare bones tip made to the NDO police department. The caller, and that's in the record at page 215, it starts on page 215, there's a transcript of that call made to the NDO police department. That caller does not describe any illegal activity. That caller does not describe any exigency. In fact, that caller does not describe any harm whatsoever to himself or anyone else. And Mr. Hallowell argues that the court relied exclusively on that report to find that Mr. Hallowell did not have reasonable suspicion for the stop. But again, if you review Judge Olguin's order denying motion for summary judgment, he concluded that based on the totality of the circumstances that Mr. Hallowell encountered on July 4, 2013, Mr. Hallowell's reasons for stopping Mr. Foster in that particular instance were based on purely speculation. Mr. Hallowell himself offers conflicting accounts as to his reasons for stopping, and I've already addressed the caller and what they told the NDO police department when they approached. I'd like to address three arguments that Mr. Hallowell is making to justify his position that he had reasonable suspicion. He first argues that he had reasonable suspicion to conduct a search of Mr. Person. He first argues that he had reasonable suspicion based on the 9-1-1 call. He second argues that he had reasonable suspicion based on a violation of California Penal Code 25400. And finally, he argues that he had reasonable suspicion based on Penal Code 25850. And in making those arguments, Your Honors, he relied on three cases, all within the Ninth Circuit. Oh, excuse me, three cases, two cases in the Ninth Circuit. One, California Supreme case, but those cases are completely distinguishable. When you compare the People v. Dolly case, when you compare the United States v. Edwards case, and when you compare the Supreme Court's decision in Navarrete v. California, all those cases discuss reasonable suspicion and what an officer must have to infringe upon the rights of the free in our country. Each of those calls concerned an exigent circumstance. In Navarrete v. California, there was a complaint about a drunken driver. In United States v. Edwards, there was a call about a victim of a crime. The person was actually shooting at the victim, and that prompted the call to dispatch. When you examine People v. Dolly, that was an assault made on a particular victim. And in fact, in that particular case, the victim called twice to complain about the assault of conduct. Those cases sharply contrast in this case, mainly because the caller in this case, and again, I invite the Court's attention to 215 in the record, the caller never once indicates that Mr. Foster points a gun at him. The caller never complains that his life is in danger. The caller never once complained that any crime was afoot. And so based on that, and based on those two accounts, and when you also consider Mr. Hallowell's account, mainly that he wanted to, he thought that there was an armed robbery in the works. When he arrived to the shopping plaza, he observed peaceful contact. There was nothing going on when he arrived to the shopping plaza. And this notion that he wanted to investigate on the penal code, those two penal code sections that I just referenced, never once does he mention that in any of his declarations, on his declaration or during his deposition testimony. And so given that internally inconsistent account, that only commands the need in this case for a jury trial, so that a jury could resolve those particular questions. Your Honor, my time is nearing its end. I wanted to have a few closing comments, if I may. You have three minutes. Okay. I just wanted to make sure that I was budgeting my time. Judge Reinhardt, in 1996 in Washington v. Lambert, you wrote these words, quote, the security of one's privacy against arbitrary intrusion by the police, which is at the core of Fourth Amendment, is basic to a free society. That principle is at work in this particular case, concerning the initial investigatory stop, concerning the force used during that stop, and also the shooting death of Mr. Foster. Simply, when a party offers a conflicting account, that does not mean that this court, on an interlocutory basis, is entitled to redo that evidence. That means that there's a tribal issue of fact, and that a jury is better positioned to make that call to determine the credibility of a witness. And in fact, the Supreme Court's case in Anderson, 477 U.S. at 277 says, credibility determinations and weighing evidence are functions for the juries, not for the judges. The district court's order denying motion for summary judgment was appropriate. He spoke to the evidentiary concerns in a footnote on page two of that very same order, and he centered his focus on whether or not the plaintiffs have properly opposed this motion based on information that could be admissible at trial. The declarations of the eyewitnesses were all made on personal knowledge. They spoke to what they saw, and they properly laid the foundation for those opinions. If there's an issue as to what a specific question on those declarations, those questions can be asked during a jury trial. The expert report of Dr. Street also can be produced in an admissible form at trial under Evidence Code 702. Dr. Street could easily lay the foundation for those opinions. The documents and the records that he relied on were reasonably relied on in this particular case, and moreover, his opinion would indeed satisfy the Daubert standard. So with that, Your Honors, I am requesting that this court affirm the district court's denial of the motion for summary judgment and to deny this interlocutory appeal and also to remand the case for further proceedings. If you have no further questions, I'll sit down. Thank you. Your Honors, I appreciate the time to try to rebut some of the points that Mr. Palmer made. We have two separate questions. Okay. One is on the detention based on the phone call and on whether there was excessive force in upholstering the gun. That's sort of two sub-questions, and neither of those are jurisdictional. Those are purely legal questions. Understood, Your Honor. Okay. Do you want to say anything about those? Yes, I'd like to, Your Honor. With regard to the initial stop, the district court didn't even address the issue of our claim of qualified immunity. The district court simply decided based upon undisputed facts about what happened. There really wasn't any dispute about what happened that led to this detention. Simply decided based upon those facts that the plaintiff could make out a case for an unlawful detention. And that really troubles me, Your Honor. That really troubles me. We have a 911 call. That gives this an imprimatur of urgency and credibility. This is a citizen who is calling 911 about a man that has a gun in his pocket on July 4th in a crowded shopping center. Was there anything wrong with having a gun in your pocket? It could be wrong if the man doesn't have a concealed weapons permit. We don't know he doesn't have any reason to suspect he doesn't. But... So... I mean, you know, there's a Second Amendment, as we hear all the time these days. I know. That includes the right to carry the gun if you have a permit. If you have a permit. But under these circumstances, Your Honor, where this gentleman was in a crowded shopping mall on July 4th, just hanging out in front of the subway near the smoke shop, that is, and based upon Officer Hallowell's knowledge that there had been... More the question really is if it's just an anonymous tip and that somebody is somewhere and you describe them. There is a Supreme Court case that pretty much says that a mere anonymous tip is not enough. But here we have an anonymous tip of a man with a gun and the person that Officer Hallowell encounters meets the description of that person to a tee. So it's not... But the call to 9-11, maybe the tip is... Well, one of the requirements for a Terry stop is that the officer has that reasonable suspicion that there's some wrongdoing afoot. And the call, to me, doesn't reasonably give rise to a suspicion of any criminal conduct, does it? It does because there is a possibility that this man... A possibility is not reasonable suspicion. It's speculation. He might have... He might have, again, might does not amount to reasonable suspicion. You might have a gun right now, right? And I might have one, but, you know, that's not reasonable suspicion. But nobody has called 9-11 and reported that I have a gun. That's the whole thing. It's not just a suspicious guy. Judge Reinhardt said having a gun alone is not a crime. I mean, in other words, is there evidence that, for instance, if you had a gun, that you don't have a concealed carry permit? There's no evidence of that either way, right? So that element is not... There's no evidence to establish that element. So there's no, you know, there's no reasonable suspicion of criminal conduct, is there? Despite that, from that 9-11 call? Just... Well, there's evidence in there about what this... I'm going to show them what I'm about, or something to that effect. There's an indication in there, in the transcript... In that 9-11 call? Correct. Yeah, go ahead. That is a statement that Mr. Foster made to the caller. Okay. Anyway, you want to address the... Judge Reinhardt had another point. The use of force during the detention. Was that the other issue? Something about unholstering the gun, right? The unholstering of the gun. Yeah. That is a separate issue, which may be a little easier for you. Right. And, again, the district court relied upon the Robinson v. Solano case. That was one of the cases that the court relied upon. In Robinson v. Solano, the gentleman there was... Had walked a number of feet away from his home. He was completely cooperative. He was known not to be armed. And officers surrounded him. And even though he was completely cooperative, one pointed a gun at his head from four to six feet away. The other officer pointed a gun at his head from ten feet away. In this case, Officer Hallowell saw a suspect that had been reported to have a gun. That suspect met the description from the 911 call exactly. The fact that he had a good indicia that this man possessed a gun means that his simply unholstering of his gun as a precautionary measure was appropriate. And there was no case law on the books at that time in 2013 that told Officer Hallowell that merely unholstering your gun as a precautionary measure when you're encountering this type of an individual under these circumstances would be a constitutional violation. And with that, I'll submit, Your Honors. Thank you. Thank you, Counsel. Thank you both for your arguments. The case is argued will be submitted. The court will stand in recess for the day. Okay. All rise.
judges: Reinhardt, Tashima, Nguyen